IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBERT L. COLLINS BEY,

                Plaintiff,

    v.

EILEEN S. GAVIN, BECKEY KRAMER,
JEREMY RICHARDSON, ERIN WEHRLE,
JAIME ADAMS, SHERYL KINYON,
ANDREW JONES, STEPHEN SCHNEIDER,
LEBBEUS BROWN, and WELLHART, LLC,[1]

                Defendants.

OPINION and ORDER

22-cv-383-jdp

---

       Plaintiff Robert L. Collins Bey, appearing without counsel, is a prisoner at Wisconsin Secure Program Facility. In 2019, Collins Bey broke his hand by punching the window of his cell door. He alleges that he complained about pain and swelling in his hand, but various prison officials delayed in getting him medical care and then delayed in having him sent off-site for treatment by a specialist. I granted him leave to proceed on claims under the Eighth Amendment to the United States Constitution and under Wisconsin negligence law.

       There are two sets of defendants in this case: a group of defendants represented by the attorney general's office who I will refer to as the "state defendants," and defendants Dr. Eileen Gavin and Wellhart, LLC, who are proceeding separately from that group. Currently before the court is a series of submissions, including motions for summary judgment from both sets of defendants. Dkt. 39 and Dkt. 68. I will grant defendants summary judgment on most of Collins Bey's claims because he fails to show that many of the defendants violated his rights. But I will

---

[1] I have amended the caption to reflect defendants' names as presented in their filings.

deny summary judgment to several state defendants; a trial is necessary to determine whether they ignored Collins Bey's complaints for help.

PRELIMINARY MATTERS

**A.  Objections to Magistrate Judge Crocker's rulings**

Collins Bey asks me to overturn Magistrate Judge Stephen Crocker's orders granting defendants' motions to extend their deadlines to submit expert witness disclosures and to file summary judgment motions, and denying Collins Bey's parallel motions to disallow defendants' late filings. Dkt. 98. Magistrate Judge Crocker twice granted defendants' motions to extend their deadlines, Dkt. 50 and Dkt. 81, and he treated Collins Bey's various motions objecting to the late filings as motions for reconsideration of his scheduling rulings, Dkt. 97.

Collins Bey styles his motion objecting to Judge Crocker's rulings as an objection under Federal Rule of Civil Procedure 72(b) ("Dispositive Motions and Prisoner Petitions"), under which I must review the magistrate judge's rulings de novo. But because Collins Bey objects to scheduling decisions, not rulings directly on dispositive matters, his motion is properly one under Rule 72(a) ("Nondispositive Matters"), under which I must "modify or set aside any part of the order that is clearly erroneous or is contrary to law."

I'd overrule Collins Bey's objections under either standard of review. Collins Bey contends that Magistrate Judge Crocker improperly "clump[ed]" together his motions objecting to defendants' filings (Dkt. 52; Dkt. 60; and Dkts. 84–86) and denied them without "addressing the merits and law cited in each motion for objection." Dkt. 98, at 3. But his major argument in each of his filings was that parties cannot seek an extension of a deadline after the deadline has passed, citing Federal Rule of Civil Procedure 6(b)(1)(A). Collins Bey ignores Rule

6(b)(1)(B), which allows a party to move for an extension after a deadline has passed "because of excusable neglect." That's the standard that Magistrate Judge Crocker applied in denying Collins Bey's motions. Excusable neglect is a flexible concept that encompasses late filings caused by inadvertence, mistake, or carelessness. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 389 (1993). In determining whether neglect is excusable, the court must consider all relevant circumstances surrounding the neglect, including the danger of prejudice to the nonmoving party, the length of the delay, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. *Id.* at 395.

Magistrate Judge Crocker initially extended the expert-disclosure and dispositive-motions deadline because of disputes over defendants obtaining Collins Bey's authorization to release medical records, and he extended the deadlines again in part because of a scheduling oversight by state defendants' counsel and in part because of an error in the court's initial extension setting new deadlines that were already passed by the time the order was issued. *See* Dkt. 50 (an October 31, 2023 order setting an October 6 expert-disclosure deadline and October 27 dispositive-motions deadline). Both of those extensions easily meet the excusable-neglect standard. Collins Bey was not prejudiced by these extensions, and the court granted him his own request for an extension of the summary judgment briefing schedule. Dkt. 107. I will overrule his objections to Magistrate Judge Crocker's orders.

## B.  Motions to compel discovery

### 1.  State defendants

Collins Bey twice moved to compel discovery against the state defendants. Dkt. 90 and Dkt. 96. Magistrate Judge Crocker ordered the state defendants to respond to certain aspects of those motions, Dkt. 97, and defendants have responded, Dkt. 100.

Collins Bey seeks several sets of X-rays taken of his hand at the hospital. In their response, the state defendants say that Collins Bey never filed a formal motion for production of those documents, that they gave Collins Bey a complete copy of the records they obtained under the release that Collins Bey signed, and that the X-rays simply aren't a part of the records that defendants obtained. Because there is no indication that defendants possess or control these X-rays, I will deny this portion of Collins Bey's motions to compel. I note that the radiologist's interpretation of at least some of the X-rays are included in Collins Bey's medical records, so he does not appear to have been prejudiced by failing to have the X-ray images themselves. Collins Bey may seek the images directly from the off-site providers.

Collins Bey seeks responses to his interrogatories and requests for admissions from state defendants Schneider, Jones, Kramer and Richardson. The parties' briefing shows that the state defendants eventually provided all of these materials to Collins Bey, but weeks after their 30-day deadline to produce their responses. The state defendants' failure to timely respond to discovery requests ultimately did not prejudice Collins Bey other than by forcing him to file a motion to compel when he should not have had to. I will deny this portion of Collins Bey's motion to compel as moot. But I will direct counsel to respond to this order, showing cause why they should not be required to pay Collins Bey's reasonable expenses incurred in filing his motion to compel.

### 2. Non-state defendants

Collins Bey also moves to compel discovery against non-state defendant Gavin, in two separate motions. In his first motion to compel, Dkt. 95, he states that he sent Gavin's counsel interrogatories and requests for admissions, but that counsel sent back only Gavin's responses to his requests for admissions, many of which Collins Bey objected to as evasive. Counsel responded with a notice that they followed up by sending Collins Bey responses to his interrogatories and Gavin's amended responses to his requests for admissions. So I will deny Collins Bey's motion to compel. But the non-state defendants' interrogatory responses were filed more than a month past their 30-day deadline for doing so. As with the state defendants, I will direct counsel for the non-state defendants to respond to this order, showing cause why they should not be required to pay Collins Bey's reasonable expenses incurred in filing his motion to compel.

In his second motion, Collins Bey moves to compel the non-state defendants to respond to his second set of interrogatories, stating that they had not yet responded within 30 days of him mailing the interrogatories. Dkt. 108. But the non-state defendants respond that they did not actually receive those interrogatories until well after Collins Bey claims to have sent them and that their 30-day window to respond had not yet ended. Dkt. 109. They quickly followed with their responses, Dkt. 110, and Collins Bey did not file a reply. I will deny this motion to compel.

I will now turn to defendants' motions for summary judgment.

UNDISPUTED FACTS

I draw the following facts from the parties' proposed findings of fact and supporting evidence. These facts are undisputed unless otherwise noted.

## A. Parties

Plaintiff Robert Collins Bey is an inmate at Wisconsin Secure Program Facility (WSPF). Defendants all worked at WSPF. Lebbeus Brown was a corrections unit supervisor; Stephen Schneider was a sergeant; Andrew Jones was a correctional officer; Erin Wehrle, Beckey Kramer, and Jeremy Richardson were nurses; Jaime Adams was the health services manager; Sheryl Kinyon was the health services assistant manager; and Eileen Gavin was a physician. Gavin was not employed directly by the state.

## B. September 9–11, 2019

In the late afternoon of September 9, 2019, Collins Bey had a conversation with defendant unit supervisor Brown in which Collins Bey became upset and punched the glass window of his door with his right hand. Collins Bey says that he told Brown that he might have broken his hand and that he asked for medical help. Brown told Collins Bey that he "should have thought about that before [he] hit the door" and Brown walked away. Dkt. 1, ¶ 16. Brown states that he notified a sergeant to call the Health Services Unit (HSU). But no help came.

Later that evening, Collins Bey called on the intercom and told defendant Sergeant Schneider that he had punched his door and that his hand hurt. Schneider says that he contacted the HSU. But no help came. Collins Bey spoke with Schneider once or twice more over the next few hours. Collins Bey states that one of these discussions was at his cell front, with Collins Bey telling Schneider that his hand had swollen to twice its size and that he was in severe pain, and showing Schneider his swollen hand. Collins Bey says that at one point,

6

Schneider told him that he had spoken to defendant Nurse Richardson, who said that Collins Bey should ice his hand, and that no one was coming to see him immediately.

The next night, Collins Bey told defendant officer Jones that he had perhaps broken his hand the day before, and he showed Jones his swollen hand. Jones says that he asked the sergeant on duty whether the HSU had been contacted and the sergeant said yes. Later that day Collins Bey told Jones that he had still not been seen by medical staff. Jones says that he contacted the HSU, but doesn't recall who he spoke to or what was said. Collins Bey says that Jones told him that he spoke with Nurse Wehrle, who was working that shift. Jones also gave Collins Bey a small ice pack. Collins Bey again complained to Jones each of the next two days about not being seen by the HSU, with Jones saying that he had contacted the HSU.

During this three-day period, medical staff did not come to assist Collins Bey. Defendant nurses Richardson, Wehrle, and Kramer worked in the HSU during portions of this period, and none of them have any recollections of being notified about Collins Bey's injury. Such a request would have been noted in Collins Bey's file. But the HSU has no record of Schneider, Jones, or anyone else contacting medical staff.

Also on the day after the injury, Collins Bey encountered defendant Dr. Gavin while Collins Bey was being escorted for a haircut. Collins Bey showed Gavin his swollen hand and told her that he was in pain and needed to see her. Gavin states that she agreed that he needed treatment and told him to file a health service request. Collins Bey disputes that Gavin told him to file a health service request; he states that she only nodded her head and said "yes" when he said that he needed treatment. Gavin made no arrangements for treatment.

### C. Medical treatment

Collins Bey had a scheduled blood draw on September 18, 2019, nine days after the injury. Collins Bey saw defendants Health Services Manager Adams and Assistant Health Services Manager Kinyon, both nurses, for the blood draw. Collins Bey showed Kinyon his hand. Kinyon examined his hand and noted that he couldn't move his ring and little fingers. Collins Bey said that some of the swelling had gone down, although it was still quite swollen. The parties dispute how much pain Collins Bey said he was in. Kinyon wrote 5 out of 10 but Collins Bey says that he told them 7. Kinyon noted that Collins Bey had Tylenol and ice for his pain. Kinyon also noted that Collins Bey's hand was tender to palpation and she also could feel his pulse in his hand, which meant that he was getting blood flow to the hand. He did not have a fever. Kinyon concluded that Collins Bey didn't need emergency care. She scheduled him to meet with Dr. Gavin the next day.

At that appointment (on a Thursday), Gavin examined Collins Bey and suspected that he had a "boxer's fracture" of the fifth metacarpal of the right hand, and possibly the fourth as well. Gavin states that she wanted to get X-rays of his hand "first thing tomorrow" and to follow up with her partner (I take Gavin to be saying that she would not be at WSPF the next day), but that Collins Bey insisted on seeing Gavin for the follow-up instead, which meant delaying the X-rays until the following Monday, September 23. Dkt. 44. Collins Bey partially disputes this. He agrees that he wanted to see Gavin instead of her partner for a follow-up, but he did not agree to postpone X-rays. In the meantime, Gavin ordered RICE treatment: rest, ice, compression, and elevation.

It appears that Gavin's order for an off-site visit on September 23 conflicted with a neurology off-site visit that Collins Bey already had scheduled that day. He told that provider about his injury and X-rays were taken, which showed a fracture of his fifth metacarpal.

The next day, Collins Bey was sent off-site to an orthopedist, who placed him in a splint. The plan was to recheck in three weeks with X-rays. Gavin's follow-up had been scheduled for this day but was postponed because Collins Bey was off-site getting his splint. Gavin said that she would follow up in a week or sooner if needed.

A few days later, Collins Bey complained of pain in his wrist. Gavin prescribed him ibuprofen 800 mg. Collins Bey refused that medication, stating that it upset his gastrointestinal tract. Gavin changed the prescription to Tylenol with codeine. Gavin then saw Collins Bey for a follow-up about a week after he received his splint.

The orthopedist's plan for a three-week follow-up put the date of that follow-up at about October 15, 2023. But Collins Bey did not have a follow-up appointment by that date. On October 18, Collins Bey met with defendants Adams and Kinyon, the health services manager and assistant manager, and told them that he was already past his three-week follow-up date and that he was still having pain in his fingers. Adams and Kinyon are not ordinarily involved in scheduling follow-up appointments with outside specialists; there are schedulers at the institution responsible for that. Adams and Kinyon state that they only get involved if staff needs them to help resolve a scheduling conflict.

Collins Bey had his off-site follow-up appointment on October 24, 2019. The provider told Collins Bey that the fracture was not completely healed and that Collins Bey should "buddy strap" the fourth and fifth fingers together to control alignment and improve motion.

Collins Bey says that his ring and little fingers are permanently deformed and weakened.

I will discuss additional facts as they become relevant to the analysis.

ANALYSIS

Collins Bey contends that defendants violated the Eighth Amendment and Wisconsin negligence law by delaying in arranging for treatment at various points after his injury. I begin with his Eighth Amendment claims.

## A.  Eighth Amendment claims

The Eighth Amendment prohibits prison officials from acting with conscious disregard toward prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). Defendants do not dispute that Collins Bey's broken hand was a serious medical need.

A defendant "consciously disregards" an inmate's need when the defendant knows of and disregards "an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). However, inadvertent error, negligence, gross negligence, and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

### 1.  Defendant Brown's response to the incident

Collins Bey alleges that during a heated discussion with defendant unit supervisor Brown, he punched the window of his cell door, injuring his hand, but that Brown didn't get

10

him medical attention when he asked for it, instead stating that he shouldn't have punched the door. At summary judgment, Brown states that he didn't think that Collins Bey needed immediate medical help, but that after he left Collins Bey's cell he told a sergeant to contact the HSU to tell medical staff that he might need medical attention. There is no record of the HSU received such a communication, and it is undisputed that no help came.

At the summary judgment stage, it is Collins Bey's duty to present evidence supporting his claim, and he doesn't directly dispute whether Brown asked a sergeant to contact the HSU. I'll assume that a reasonable jury could infer from the lack of HSU records and lack of subsequent medical attention that Brown did not seek help. But that alone isn't enough to violate the Eighth Amendment. I conclude that no reasonable jury could infer that Brown was aware that Collins Bey has a serious medical need that required his immediate intervention. Brown had seen Collins Bey punch the window, and Collins Bey told him that he might have broken it and that he wanted medical help. But a correctional officer isn't required to seek emergency help every time an inmate tells him about a medical problem. Collins Bey had other ways to contact the HSU, such as requesting help by intercom or by writing them directly. At this early time following Collins Bey's injury, Brown didn't violate the Eighth Amendment by failing to rush into action. I will grant this portion of the state defendants' motion for summary judgment.

## 2.  Complaints to defendants Schneider and Jones

Collins Bey states that by that evening and over the next couple of days, his hand became severely swollen and he suffered severe pain. He spoke with defendant Sergeant Schneider by intercom and in person the evening of the injury and then with Officer Jones in person the next couple of days, showing them his severely injured hand; Collins Bey says that

11

his hand was "twice its size," Dkt. 1, ¶ 17, or "bigger than a baseball" Dkt. 113, ¶ 2. He says that defendants both told him that they spoke with HSU staff (Schneider with defendant Nurse Richardson and Jones with defendant Nurse Wehrle). But no one from the HSU contacted Collins Bey. Collins Bey contends that Schneider and Jones lied when they said that they had contacted medical staff because nobody came to help him.

In his declaration, Schneider says that he did contact the HSU (he doesn't remember precisely who) and that he told Collins Bey to submit a health service request. Collins Bey denies that Schneider told him to file his own request. Jones states that his sergeant told him that he had already contacted the HSU and that Jones himself called the HSU after Collins Bey told him that he still hadn't been seen (Jones doesn't remember who he talked to or what the conversation entailed). The defendant nurses do not recall speaking with either Schneider or Jones, but they say that they would have recorded those interactions in Collins Bey's file. Collins Bey's HSU records do not show any contact from Schneider, Jones, or any other security staff in the days following Collins Bey's injury. And no help came for Collins Bey. Given these facts, a reasonable jury could draw the inference that neither Schneider nor Jones actually contacted the HSU about Collins Bey's hand injury.

Correctional officers aren't trained medical professionals, but they can still violate an inmate's Eighth Amendment rights by intentionally denying or delaying access to medical care. *Estelle*, 429 U.S. at 104–05. A reasonable jury could conclude that's what happened here. It's undisputed that Jones gave Collins Bey some ice, but Collins Bey states that it wasn't enough to ease his pain. Schneider suggests that Collins Bey could have filed his own health service request, but given Collins Bey's assertions that he showed defendants his severely swollen and painful writing hand, and that defendants also told him that they had already contacted the

HSU even when they hadn't, a reasonable jury could conclude that defendants delayed his access to medical care for a severe injury. So defendants aren't entitled to summary judgment on the merits of Collins Bey's claims.

The state defendants also contend that Schneider and Jones are entitled to qualified immunity for these claims. But the Court of Appeals for the Seventh Circuit has warned against applying qualified immunity in Eighth Amendment cases because the merits of those claims and qualified immunity "effectively collapse into one" question in many circumstances. *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). Because the legal standard for Eighth Amendment medical care claims is well established and the disputes raised regarding such claims are largely factual rather than legal, "[i]f there are genuine issues of fact concerning th[e] elements [of the claim], a defendant may not avoid trial on the grounds of qualified immunity." *Id.*; *see also Estate of Clark v. Walker*, 865 F.3d 544, 553 (7th Cir. 2017) ("The Supreme Court has long held that prisoners have an Eighth Amendment right to treatment for their 'serious medical needs.' For purposes of qualified immunity, that legal duty need not be litigated and then established disease by disease or injury by injury."). So defendants are not entitled to summary judgment by way of qualified immunity. I will deny the state defendants' motion for summary judgment on these Eighth Amendment claims.

### 3. Defendant nurses Richardson, Kramer, and Wehrle

Alternately, Collins Bey contends that Schneider and Jones did contact defendant nurses Richardson, Kramer, and Wehrle, but the nurses refused to come help him. It is undisputed that there is no HSU record of correctional officers seeking medical help in the days following Collins Bey's injury. All three of these nurses were on duty for parts of the time at issue. Both Schneider and Jones maintain that they did reach out to HSU staff, although

13

they don't remember specifically who they contacted. A reasonable jury could consider the contradictory testimony by defendants and conclude that the defendant nurses were notified by Schneider and Jones about Collins Bey's injury but they did nothing to treat it. The defendant nurses aren't entitled to summary judgment on qualified immunity grounds either, for the same reasons as the claims against Schneider and Jones. I will deny the state defendants' motion for summary judgment on these Eighth Amendment claims.

### 4. Encounter with defendant Dr. Gavin

The day after Collins Bey broke his hand, he ran into Dr. Gavin as he was being escorted to a haircut. Collins Bey showed Gavin his swollen hand and told her that he was in pain and needed to see her. Gavin states that she agreed that he needed treatment and told him to file a health service request. Collins Bey disputes that Gavin told him to file a health service request; he states that she only nodded her head and said "yes" when he said that he needed treatment. For purposes of summary judgment I will credit Collins Bey's version of events.

I take Collins Bey to be arguing that Gavin should either have immediately sent him to the emergency room or arranged an appointment with her. One could imagine extreme circumstances in which medical personnel might violate the Eighth Amendment by observing a severe medical problem and failing to call for an ambulance. But given the facts here, no reasonable jury could conclude that Gavin consciously disregarded Collins Bey's needs by failing to drop everything and call for emergency intervention. He presented with a problem that Gavin agreed could be addressed in an ordinary appointment.

That leaves the question whether Gavin violated the Eighth Amendment by failing to arrange for an appointment herself. Gavin states that she was unable to see an inmate "absent [a health service request] or scheduling by the nursing staff." Dkt. 43, ¶ 6. I find it implausible

that Gavin would have absolutely no ability to arrange for a medical appointment herself, such as by instructing HSU staff to schedule an appointment based on her own observation of a medical problem. But this was a chance meeting in a prison hallway, not an official examination; Gavin's failure to take further action doesn't mean that she violated the Eighth Amendment. She was entitled to rely on the standard prison procedures for prisoners to schedule appointments—out in the community, one wouldn't expect a doctor to proactively set an appointment for a patient she encounters on the street. It didn't show conscious disregard for Gavin to agree with Collins Bey that he needed to be seen, yet fail to set up an appointment herself. So I will grant the non-state defendants' motion for summary judgment on this claim.

### 5. Examination with defendants Adams and Kinyon

Collins Bey did not receive medical attention for his hand injury until September 18, 2019, nine days after he injured it. When Collins Bey saw defendants Health Services Manager Jamie Adams and Assistant Health Services Manager Sheryl Kinyon, both nurses, for a blood draw, he showed them his hand. Kinyon examined his hand and noted that he couldn't move his last two fingers. Collins Bey said that some of the swelling had gone down, although it was still quite swollen. The parties dispute how much pain Collins Bey said he was in. Kinyon wrote 5 out of 10 but Collins Bey told them that he said 7.

Unlike the previous defendants, Kinyon provided care to Collins Bey. Collins Bey argues that Kinyon should have sent him to the emergency room. But whether that would have been more appropriate than the course of action that Kinyon took is not the relevant question. A plaintiff can establish a defendant's conscious disregard by showing that the defendant's treatment decision "is such a substantial departure from accepted professional judgment,

practice, or standards as to demonstrate that the person responsible actually did not base the decision on such judgment." *Johnson v. Rimmer*, 936 F.3d 695, 707 (7th Cir. 2019).

No reasonable jury could conclude that Kinyon's care fell below this standard. Kinyon examined Collins Bey's hand even though that wasn't the purpose of their appointment and she scheduled an appointment to see Dr. Gavin the next day. The discrepancy between the parties regarding Collins Bey's reported pain level (5 versus 7) is minor, and Kinyon made sure that he had Tylenol and ice. Collins Bey now says that the Tylenol was ineffective to treat his pain but there isn't evidence sufficient to show that Kinyon knew that it would be ineffective. Because the evidence does not show that Kinyon consciously disregarded Collins Bey's condition, I will grant the state defendants' motion for summary judgment on this claim.

As for defendant Adams, she was present during the blood draw and Kinyon's examination of Collins Bey, but she didn't directly provide care herself. Because I have concluded that Kinyon's care did not violate the Eighth Amendment, Adams did not violate the Eighth Amendment either by failing to intervene in that care. I will grant the state defendants' motion for summary judgment on this claim.

### 6. Defendant Gavin's treatment

When Dr. Gavin examined Collins Bey the next day, she suspected that his hand was broken but she did not immediately send him to the emergency room for X-rays. He ended up being X-rayed four days later. The parties dispute why this delay occurred, with Gavin saying that Collins Bey agreed to wait to couple the X-rays with a follow-up appointment with Gavin herself rather than another provider. Collins Bey agrees that he wanted to push the follow-up to the following week so that it could be with Gavin but that he didn't agree to wait for X-rays, and he says that there wasn't any reason to tether the off-site X-ray date to the follow-up

16

appointment date. At the summary judgment stage I will credit Collins Bey's version of the events and I agree with him that there's a reasonable inference that it wasn't necessary to delay the X-rays for the same day as the separate follow-up appointment with Gavin.

Nonetheless, no reasonable jury could conclude that Gavin's care violated the Eighth Amendment. She examined him, ordered X-rays, and ordered RICE treatment in the meantime. None of that suggests conscious disregard. Collins Bey doesn't explain how these decisions were a substantial departure from accepted professional judgment other than to state that he should have been sent out to the emergency room for X-rays immediately. But Gavin's decisions were reasonable responses to the injury. Collins Bey doesn't provide anything other than speculation that the four-day delay in obtaining X-rays harmed him, which isn't sufficient to support his claim. *See, e.g., Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014) (While nonmovant "is entitled . . . to all reasonable inferences in her favor, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." (citation omitted)). I will grant summary judgment to the non-state defendants on this claim.

### 7. Scheduling the off-site follow-up

Collins Bey received X-rays and was sent to the orthopedist for a splint, with the orthopedist stating, "Recheck in 3 weeks with x-rays right hand after splint removal." Dkt. 71-1, at 35. Collins Bey's final set of Eighth Amendment claims is against defendants Adams and Kinyon regarding a delay in the scheduling of that follow-up appointment.

Collins Bey met with defendants Adams and Kinyon on October 18, 2019, and told them that he was already past his three-week follow-up date (October 15). Adams and Kinyon say that despite being the HSU supervisors they have no role in scheduling follow-up

appointments and that they've delegated that task to others. Defendants would not escape liability if they were aware that their subordinates were violating Collins Bey's rights. *See Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) (Supervisors could be personally involved in a constitutional deprivation if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.")).

Nonetheless, the undisputed facts do not support an Eighth Amendment claim. Even without defendants' intervention, Collins Bey received the follow-up appointment on October 24, 2019, nine days after the three-week plan stated by the orthopedist. This short delay in a medical appointment is commonplace in everyday life and Collins Bey doesn't present any evidence that it harmed him. I will grant summary judgment to the state defendants on this claim.

## B.  State-law negligence claims

I granted Collins Bey leave to proceed on Wisconsin-law negligence claims against each of the defendants for each of the allegations underlying his Eighth Amendment claims. Dkt. 10. A negligence claim "requires the following four elements: (1) a breach of (2) a duty owed (3) that results in (4) an injury or injuries, or damages." *Paul v. Skemp*, 2001 WI 42, ¶ 17. Collins Bey has an additional claim against defendant Wellhart, LLC, for respondent superior liability regarding its employment of defendant Dr. Gavin.

The state defendants contend that Collins Bey did not comply with Wisconsin's notice of claim requirements under Wis. Stat. § 893.82. That statute generally requires a claimant bringing a civil action against a state employee to serve written notice of the claim on Wisconsin's attorney general within 120 days of the event giving rise to the action. Wis. Stat. § 893.82(3). Collins Bey concedes that he did not file a notice of claim. That suffices as a

reason to dismiss his negligence claims against non-medical staffers Brown, Schneider, and Jones.

But I have previously stated that that medical negligence claims brought against prison staff fall within the medical malpractice exception for filing a notice of claim in § 893.82(5m). *See, e.g.*, *Seymour v. Kostchyz*, No. 22-cv-170-jdp, 2022 WL 20328157, at *3 (W.D. Wis. Aug. 19, 2022). So a notice of claim is not required for his claims against medical staff or non-state employees Wehrle, Kramer, Richardson, Adams, Kinyon, and Gavin.

Both sets of defendants argue that Collins Bey's medical negligence claims must be dismissed because he presented no evidence of the standard of care. The general rule is that expert testimony is required to establish the standard of care in a medical negligence case. *Gil v. Reed*, 535 F.3d 551, 557–58 (7th Cir. 2008); *Carney-Hayes v. Nw. Wis. Home Care, Inc.*, 2005 WI 118, ¶ 37, 284 Wis. 2d 56, 699 N.W.2d 524. But there is an exception to that rule when common knowledge would allow a jury to find negligence. *Gil*, 535 F.3d at 557–58; *see also Jones v. Edge*, No. 16-cv-848-jdp, 2018 WL 2301846, at *4 (W.D. Wis. May 21, 2018). For Collins Bey's claims against nurses Richardson, Kramer, and Wehrle, a layperson could conclude that it was negligent to completely ignore multiple calls for help after Collins Bey's serious hand injury. So I will deny the state defendants' motion for summary judgment on those claims.

As for the remainder of Collins Bey's negligence claims, about defendants Adams, Kinyon, and Gavin providing care to Collins Bey but not as quickly as he would have liked, Collins Bey would need to present expert testimony showing that defendants failed to meet the standard of care under the circumstances facing them. Sometimes this court will recruit counsel to assist a litigant in obtaining an expert for this type of issue. But given the dearth of

willing counsel available to take pro bono cases, this court should not recruit counsel "if the plaintiff's 'chances of success are extremely slim.'" *Watts v. Kidman*, 42 F.4th 755, 766 (7th Cir. 2022) (quoting *Maclin v. Freake*, 650 F.2d 885, 887 (7th Cir. 1981). Given the very short delays that Collins Bey encountered in receiving off-site care for his broken hand once he was seen by WSPF medical staff, I consider it extremely unlikely that recruited counsel would be able to find an expert who would opine that defendants failed to meet the standard of care. So I will grant defendants' motions for summary judgment on these claims. That means that defendant Wellhart must also be dismissed.

CONCLUSION

I am granting summary judgment to defendants on most of Collins Bey's claims. The claims left for trial are his (1) Eighth Amendment claims against defendants Jones, Schneider, Richardson, Kramer, and Wehrle; and (2) Wisconsin-law medical negligence claims against Richardson, Kramer, and Wehrle. I will direct the clerk of court to set a scheduling conference with Magistrate Judge Anita Marie Boor to set the trial date and associated pretrial-submission deadlines for those claims.

ORDER

IT IS ORDERED that:

1. Plaintiff Robert L. Collins Bey's objections to Magistrate Judge Stephen Crocker's scheduling orders, Dkt. 98, are OVERRULED.

2. Plaintiff's motions to compel discovery, Dkt. 90; Dkt. 95; Dkt. 96; Dkt. 108, are DENIED.

3.  Counsel for the state defendants may have until October 11, 2024, to why they should not be required to pay plaintiff's reasonable expenses incurred in filing his motion to compel at Dkt. 96.

4.  Counsel for the non-state defendants may have until October 11, 2024, to why they should not be required to pay plaintiff's reasonable expenses incurred in filing his motion to compel at Dkt. 95.

5.  The state defendants' motion for summary judgment, Dkt. 68, is DENIED in part.

6.  The non-state defendants' motion for summary judgment, Dkt. 39, is GRANTED.

7.  Defendants Brown, Adams, Kinyon, Gavin, and Wellhart, LLC are DISMISSED.

8.  The clerk of court is directed to set a scheduling conference with Magistrate Judge Anita Marie Boor.

Entered September 26, 2024.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge